UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN FERNANDO MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Case No. 19-cv-05624-EMC<br><br>**ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE**<br><br>Docket No. 37 |

On or about June 11, 2019, Plaintiff Benjamin Fernando Martinez filed a putative class action in the Superior Court of California, County of Alameda entitled: Benjamin Fernando Martinez v. Costco Wholesale Corporation, Case No. RG19022389 ("Complaint") asserting the following causes of action: (1) Failure to Pay Lawful Wages including Overtime Wages and Minimum Wage (Labor Code §§510, 1194, and 1199, and the IWC Wage Order); (2) Failure to Provide Lawful Meal Periods or Compensation in Lieu Thereof (Labor Code §§226.7 and 512, and the IWC Wage Order); (3) Failure to Provide Rest Periods or Compensation in Lieu Thereof (Labor Code § 226.7 and IWC Wage Order); (4) Failure to Timely Pay Wages Due at Termination (Labor Code §§ 201-203); (5) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Labor Code § 226); and (6) Violation of Unfair Competition Law (Business & Professions Code § 17200-17208).  On September 6, 2019, Defendant removed the action to the United States District Court, Northern District of California, where the action is currently pending as Case No. 3:19-cv-05624-EMC.  Defendant denies Plaintiff's allegations and denies liability on all claims.  In or about March 2022, the Parties reached a settlement subject to Court approval as represented in the Class Action Settlement

Agreement ("Settlement", "Settlement Agreement").

NOW THEREFORE, having read and considered the Settlement and Exhibits thereto, for the reasons stated on the record at the July 15, 2022 hearing and those that follow, IT IS HEREBY ORDERED:

1. The Order hereby incorporates by reference the definitions of the Settlement as though fully set forth herein, and all terms used herein shall have the same meaning as set forth in the Settlement.

The Court conditionally certifies and approves, for settlement purposes only, a Class as defined as follows: all non-exempt employees employed by Defendant in California during the Class Period who have not sued Costco on any Released Claim and who received an Extra Check during the Class Period. The Class Period is from June 11, 2015, extending through the date of Preliminary Approval.

Here, based on the information obtained from Costco, the Class is composed of approximately 29,138 current and former employees, all of whom are readily identifiable from the Class Members' Data. Hawkins Decl. ¶ 25. Because it would be impracticable to join such a large number of employees in a single action, the numerosity requirement is met. *Id.* Plaintiff and Class Members share common legal and factual questions, e.g., whether Costco accurately calculated the Extra Check bonus regular rate and therefore underpaid overtime wages in violation of Lab. Code sections 510 and 1194. This claim and the derivative claims for waiting time penalties and inaccurate wage statements can be resolved and proven for all Class Members by reference to Costco's uniformly applied policies and practices. Hawkins Decl. ¶ 26. The class claims are well-suited for class-wide resolution as they present common questions of law and fact. Plaintiff's Extra Check claim and derivative claims are premised on allegations that Costco failed to correctly calculate the Extra Check bonus regular rate and thus failed to pay accurate overtime compensation. Hawkins Decl. ¶ 27. The legal standards and requirements for proving these wage and hour claims under the California Labor Code are the same for Plaintiff's individual claims and those of all Class Members. *Id.* Here, there do not appear to be any conflicts of interest between Plaintiff and Class Members, as Plaintiff, like all Class Members, was employed in a Costco

warehouse in a non-exempt hourly position during the Class Period and received an Extra Check bonus payment. Compl. ¶¶ 12-18; Hawkins Decl. ¶ 28. Moreover, plaintiff's counsel has substantial class action experience, including in actions alleging similar violations of the California Labor Code, worked to investigate and identify the potential claims in this action. Hawkins Decl. ¶¶ 28, 33. Individual cases would be uneconomical for potential plaintiffs and their counsel because the cost of litigation dwarfs their potential recovery, which Plaintiff estimates to be an average of approximately $30 per Extra Check period. *Id*. These individual cases would cause duplication of efforts and resources. Therefore, a class action is the superior method of resolution under Rule 23(b)(3).

    2.    James R. Hawkins and Isandra Y. Fernandez of James Hawkins, APLC (Class Counsel) shall represent the Class for purposes of the Settlement in this Action. Any Class Member may enter an appearance in the Action, at their own expense, either individually or through counsel of their own choice. However, if they do not enter an appearance, they will be represented by Class Counsel.

    3.    The Class Representative shall be Plaintiff.

    4.    The Court hereby preliminarily approves the proposed Settlement upon the terms, conditions, and all release language set forth in the Settlement attached to the Declaration of James R. Hawkins as Exhibit 1. For the reasons stated on the record and those that follow, the Court finds that the Settlement appears to be within the range of reasonableness necessary for preliminary approval by the Court. It appears to the Court that the Settlement terms are fair, adequate, and reasonable as to all potential Class Members when balanced against the probable outcome of further litigation, given the risks relating to liability and damages.

The settlement agreement provides for a non-reversionary Gross Settlement Amount of $2,250,000. Hawkins Decl. ¶ 22. This amounts to 56.25% of the maximum verdict value of $4 million if liability were established for the entire class period, and 86% of the more plausible expected verdict value of $2.6 million if liability were established from the begging of the class period until March 2019. If the Court were to grant Plaintiff's fee and costs requests, an estimated $1,384,075, will be distributed to Settlement Class Members, or approximately 34.6% of the

3

maximum verdict value and approximately 56% of the more plausible verdict value.

    Plaintiff recognize several weaknesses in its case. First, Plaintiff concedes that discovery demonstrated a lack of evidence to support the standalone wage and hour, rest break and meal break claims that Plaintiff asserted in the complaint. Mot. at 12. Instead, Plaintiff states that the "predominant claim against Defendant turned out to be that Costco failed to properly calculate the non-discretionary "Extra Check" bonus payment in the regular rate of pay for purposes of calculating overtime compensation during the class period." *Id.* Accordingly, the scope of the Released Claims in the Settlement Agreement is limited to claims relating to overtime compensation stemming from the Extra Check payment. *See* Settlement ¶ 8.1; Hawkins Decl. ¶ 14; Mot. at 13-14 ("In sum, the claims that form the basis for this class action settlement all arise from Defendant's alleged failure to properly calculate the regular rate of pay relative to Costco's Extra Check bons program and thus consequential failure to properly calculate overtime wages for Plaintiff and the Class").

    Second, Costco maintains that, for the class period prior to March 17, 2019, it is not liable based on the Court of Appeal's holding in *Marin* and strongly disputes any liability after March 2019 when it changed the calculation to comply with *Alvarado*. In support of its position, Costco relies on the California Court of Appeal case, *Marin v Costco Wholesale Corp,* 169 Cal. App. 4th 804 (2008), in which the Court of Appeal ruled that Costco's Extra Check bonus calculation -- the very calculation that Plaintiff is challenging here -- did not violate California law—at least as applied to workers who had not worked 1,000 hours in an Extra Check period. Moreover, while maintaining that it has always paid the regular rate correctly with respect to the Extra Check, Costco also contends that as of March, 2019, its bonus regular rate calculation also complies with *Alvarado*, thus precluding any liability for failure to correctly pay overtime compensation from March 2019 forward. *Id.* Plaintiff contends that *Alvarado* applies retroactively, and that, at a minimum, from the inception of the class period through the March 17, 2019, Costco's regular rate calculation was incorrect under *Alvarado* and thus Defendant underpaid the overtime amounts during said time period. Hawkins Suppl. Decl. ¶ 5. Thus, there is a contested question of law as to whether Costco's calculation of overtime wages based on the Extra Check violates California

law.

Third, Plaintiff admits that *even if* he were to succeed in establishing that Costco is liable for miscalculating employees overtime wages under *Alvarado*, Plaintiff's derivative claims for Failure to Timely Pay Final Wages and Inaccurate Wage Statements were highly unlikely to succeed, because Plaintiff would need to show that Costco violated those sections of the labor code, Cal. Lab. Code §§ 203, 225, willfully, knowingly or intentionally. *See* Suppl. Br. at 3-4. Costco's good faith argument and reliance on *Marin* for its calculation procedures strongly undermines Plaintiff's ability to show willfulness to establish liability on those derivative grounds.

Considerable disagreement exists between the parties on the facts and the law, particularly with respect to whether the Extra Check bonus is a "flat sum" under *Alvarado*, as Plaintiff contends, or a hybrid under *Marin* as Defendant argues, and as to whether Costco is liable under *Alvarado* with respect to the pre-March, 2019 bonus overtime calculations. *Id.* Moreover, Costco contends that Plaintiff will not be able to certify a class, especially post-March 2019, based on allegations that certain class members were still not accurately paid the bonus overtime. Plaintiff seems to concede this point in admitting that Costco's calculation procedures after March 2019 are likely compliant with *Alvarado*. There is also a risk that Costco could obtain summary judgment as to plaintiff's Extra Check claims, relying on *Marin*, and thus Class Members would not obtain any recovery at all. *See e.g., Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008). Accordingly, absent the present Settlement, the further conduct of this litigation will likely span several additional years and require the dedication of extensive resources, if class certification was granted, to establish the merits of Plaintiff's class claims at trial or through contested motion practice and through appeal. Hawkins Decl. ¶ 19.

In light of these litigation risks, the amount offered in settlement, compensating between 34% and 56% of the maximum and reasonable verdict values, the settlement amount offered to Class Members appears reasonable. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("in balancing, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class."); *id.* at 527 ("[I]it is well-settled law that a proposed settlement may be acceptable even though it

amounts to only a fraction of the potential recovery that might be available to the class members at trial."); *see Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal.2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery); *Knight v. Red Door Salons, Inc.*, No. 08–01520 SC, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class"); *Glass v. UBS Fin. Serv., Inc.*, No. C–06–4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd* 331 Fed.Appx. 452 (9th Cir. 2009) (finding a wage and hour settlement in the range of 25 to 35% of claimed damages fair and reasonable in light of the uncertainties involved in the litigation).

It further appears that investigation and research has been conducted such that counsel for the Parties at this time are reasonably able to evaluate their respective positions. It further appears to the Court that the Settlement at this time will avoid substantial additional costs by all parties, such as the delay and risks, that would be presented by the further prosecution of the Action. It appears that the Settlement has been reached as a result of arms-length negotiations utilizing an experienced third-party neutral. Here, the parties arrived at the Settlement Agreement after engaging in formal and informal discovery, participating in a full-day session with a professional mediator, Jeffrey A. Ross, and engaging in subsequent discussions between March and July 2021. Hawkins Decl. ¶¶ 7-8. The parties engaged in multiple post-mediation conferences between counsel and further communications with the mediator, before they finally agreed to a proposal and additional settlement terms put forward by the mediator. *Id.*

5. The Court confirms Atticus Administration, LLC as the Settlement Administrator and preliminarily approves that settlement administration costs shall be paid from the Gross Settlement Amount (as that term is defined in the Settlement). Any amount awarded for costs of

6

1 administration to Atticus Administration, less than the amount requested, will result in the non-
2 awarded amount to be awarded to Class Members who have not properly excluded themselves
3 from the Settlement on a proportionate basis to the amount of their Individual Settlement
4 Payments.  The cost of administration includes all tasks required of the Settlement Administrator
5 by this Settlement Agreement, including the issuance of the Notice of Settlement and other
6 documents as explained in the Settlement. Atticus Administration is directed to perform all other
7 responsibilities set forth for the Settlement Administrator as set forth in the  Settlement.

8       6.      A Final Approval Hearing (the "Hearing") shall be held on **January 19, 2023 at
9 1:30 p.m.** before the Honorable Edward M. Chen in the San Francisco Division, Courtroom 5 of
10 the above- referenced Court.  The purpose of such Hearing will be to: (a) determine whether the
11 proposed Settlement should be approved by the Court as fair, reasonable and adequate; (b)
12 determine the reasonableness of Class Counsel's request for attorneys' fees and costs; (c) the
13 reasonableness of the Service Award requested for Plaintiff; and (d) Order entry of Judgment in
14 the Action, which shall constitute a complete release and bar with respect the Released Claims
15 described in Paragraph 13, below.

16       7.      The Court hereby approves, as to form and content, the Notice of Class Action
17 Settlement ("Class Notice") attached as Exhibit A to the Settlement Agreement.  The Court finds
18 that the mailing and distribution of the Class Notice in the manner set forth in Paragraph 9 of this
19 Order meet the requirements of due process and are the best notice practicable under the
20 circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

21       8.      The Court directs the mailing of the Court approved Class Notice via First Class
22 U.S. Mail to the Class Members in accordance with the schedule and procedures set forth in the
23 Settlement.  The Court finds that the dates and procedure selected for the mailing of the Class
24 Notice meet the requirements of due process, provide the best notice practicable under the
25 circumstances, and constitute due and sufficient notice to all persons entitled to notice.

26       a.      Prior to mailing, the Settlement Administrator will perform a search based
27 on the National Change of Address Database information to update and correct for
28 any known or identifiable address changes.  If a new address is obtained by a way

7

of returned or undeliverable mail, then the Settlement Administrator shall promptly forward the original Class Notice to the updated address via first-class regular U.S. mail indicating on the original mailed package the date of such remailing.

9. Class Members may request exclusion from the Settlement by submitting a timely written request to be excluded from the Class as set forth in the Stipulation. In order to be valid, the Request for Exclusion letter must be postmarked and sent to the Settlement Administrator within **seventy-five (75) calendar days after the Settlement Administrator mails the Class Notice to Class Members**. Any Class Member who submits a valid and timely Request for Exclusion will not be entitled to any recovery under the Settlement and will not be bound by the Settlement or have any right to object, appeal or comment thereon. Class Members who fail to submit valid and timely Requests for Exclusion shall be bound by all terms of the Settlement and any Final Judgment.

10. Class Members who do not request exclusion may object to the Settlement and appear at the Final Approval Hearing to show cause why the proposed Settlement should not be approved, Judgment in the Action should not be entered, and to present any opposition to the application of Class Counsel for attorneys' fees, costs and expenses. In order to object to the proposed Settlement, the Class Member must send a Notice of Objection and copies of any papers in support of his or her position pursuant to the terms of the Stipulation to the Settlement Administrator within **seventy-five (75) calendar days after the Settlement Administrator mails the Class Notice to Class Members**. Any Class Member who does not make his or her objection in the manner provided for herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as incorporated in the Settlement or to the award of attorneys' fees and costs and expenses to Class Counsel unless otherwise ordered by the Court.

The Court hereby preliminarily approves the definition and disposition of the Gross Settlement Amount as that term is defined in the Settlement. The Gross Settlement Amount is equal to, and shall not exceed, Two Million Two Hundred Fifty Thousand Dollars ($2,250,000), which is inclusive of the payment of attorneys' fees to Class Counsel not to exceed Seven

1  Hundred Forty- Nine Thousand Nine Hundred Twenty-Five Dollars ($749,925.00); Class
2  Counsel's costs not to exceed Twenty Thousand Dollars ($20,000); the Settlement Administration
3  Costs not to exceed Twelve Thousand Dollars ($90,000); the Net Distribution Fund to be
4  distributed to Class Members who do not exclude themselves from the Settlement; the Service
5  Award to Plaintiff in an amount not to exceed Six Thousand Dollars ($6,000).  Defendant shall be
6  required to pay only the Gross Settlement Amount, in addition to Defendant's portion of any
7  payroll taxes (which will be paid by Defendant in addition to the Gross Settlement Amount).
8        The Court preliminarily approves the above distribution of the Gross Settlement Amount,
9  all subject to the Court's Final Approval of the Settlement.  With respect to the amount allocated
10 for attorney fees, the Court has expressed reservations regarding the reasonableness of the amount
11 requested subject to further scrutiny at final approval.  "[C]ourts have an independent obligation to
12 ensure that [an attorneys' fee] award, like the settlement itself, is reasonable, even if the parties
13 have already agreed to an amount."  *In re Bluetooth Headset*, 654 F.3d at 941.  "Where a
14 settlement produces a common fund for the benefit of the entire class, courts have discretion to
15 employ either the lodestar method or the percentage-of-recovery method" in awarding attorneys'
16 fees.  *Id.* at 942 (citation omitted).  "Because the benefit to the class is easily quantified in
17 common-fund settlements," courts may "award attorneys a percentage of the common fund in lieu
18 of the often more time-consuming task of calculating the lodestar."  *Id.*  "Applying this calculation
19 method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee
20 award."  *Id.*  If the Court departs from that benchmark, the record must indicate the Court's
21 reasons for doing so.  *See e.g., Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000).  Here,
22 Plaintiffs' counsel seeks 33.33% of the Gross Settlement Amount, approximately $749,925.
23 Settlement ¶¶ 7.3, 9.3.  The Court observes that, at this juncture, Plaintiff's counsel's hours spent
24 on this case are unlikely to justify an upward departure from the 25% benchmark.  Plaintiff's
25 counsel states it has expended $195,725 on this case, using a lodestar calculation.  Adjusting the
26 benchmark to 33.33% or $750,000 in attorneys' fees would constitute a multiplier of more than
27 3.75 on Plaintiff's lodestar amount.  The Court reserves judgment on the final fee award until the
28 final approval hearing.

11.     Upon entry of Judgment by the Court, all Class Members who did not exclude themselves from the Settlement shall fully and finally release and discharge Costco Wholesale Corporation, in accordance with the terms of the Settlement.

12.     In addition to the releases made by the Class Members described in Paragraph 13, upon entry of Judgment by the Court, Plaintiff will for himself only, as of the Effective Date, grant a general release, including a California Civil Code §1542 Waiver of Rights, in accordance with the Settlement.

13.     The Court reserves the right to adjourn the date of the Hearing without further notice to the Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

14.     Pending final determination as to whether the settlement contained in the Settlement should be approved, Plaintiff and Class Members, whether directly, representatively, or in any other capacity, whether or not such persons have appeared in the Action, shall not institute or prosecute any claims against the Released Parties, which have been or could have been asserted in the Action based upon the acts and transactions alleged therein, including any claims related to or arising out of the allegations in the Action.

15.     All further proceedings in this Action shall be stayed except such proceedings necessary to review, approve, and implement this Settlement.

16.     In the event: (i) the Court does not finally approve the Settlement as contemplated by the Settlement; (ii) the Court does not enter a Final Approval Order as contemplated by the Settlement, which becomes final as a result of the occurrence of the Effective Date (as that term is defined by in the Settlement); (iii) Defendant elects to void the Settlement as provided under the terms of the Settlement; or (iv) the Settlement does not become final for any other reason, the Settlement shall be null and void and any order or judgment entered by this Court in furtherance of the Settlement shall be deemed as void from the beginning.  In such a case, the Parties and any funds to be awarded under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of the Settlement, and the Parties shall proceed in all respects as if the Settlement had not been executed.

17. Neither the Settlement, preliminarily approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Settlement, shall be admissible in evidence for any purpose except as provided in the Settlement.

18. The Court orders the following implementation schedule for further proceedings:

| | |
|---|---|
| Deadline for Defendant to provide Settlement Administrator with list of Class Members | **30 calendar days after Preliminary Approval** |
| Deadline for Settlement Administrator to mail and email Notice of Class Settlement to Class Members | **14 calendar days from receiving list of Class Members from Defendant** |
| Last day to submit Requests for Exclusion or Objections | **75 calendar days from mailing of Notice of Settlement** |
| Settlement Administrator to provide declaration reporting on Requests for Exclusion, Objections, and other results of class notice | **At least fourteen calendar days prior to the Fairness Hearing** |
| Deadline to file motion for Attorneys' fees, costs, and class representative service award | **December 15, 2022** |
| Deadline to file motion for Final Approval | **December 15, 2022** |
| Fairness hearing on Final Approval and on Class Counsel Award and Service Award | **January 19, 2023 at 1:30 p.m. PST** |

**IT IS SO ORDERED**.

Dated: July 25, 2022

_____
EDWARD M. CHEN
United States District Judge